IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **COREY LEWIS COLEMAN,** : | |
| : | |
| **Plaintiff** : | |
| : | |
| VS. : | |
| : | CIVIL No: 5:15-CV-0267-CAR-CHW |
| **WILLIAM DANFORTH, et al,** : | |
| : | |
| **Defendants** : | |

## ORDER & RECOMMENDATION

Plaintiff Corey Lewis Coleman, a state inmate currently confined at the Georgia Diagnostic and Classification Prison in Jackson, Georgia, filed a *pro se* civil rights complaint seeking relief under 42 U.S.C. § 1983. Plaintiff also requested leave to proceed in this action without prepayment of the required filing fee. For those reasons discussed below, Plaintiff will be permitted to proceed *in forma pauperis* without prepaying any portion of the filing fee. The Court has also reviewed Plaintiff's Amended Complaint (ECF No. 10) and will allow him to go forward with a First Amendment claim against Defendant Warden Danforth *and* Eighth Amendment claims against Defendants Wilcox, Jordan, Taylor, Bell, Cert. Officer Doe, Nurse Jane Doe, Dr. Chaney, and Dr. Burnside. It is **RECOMMENDED**, however, that all other claims and parties, as discussed herein, be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim. *See* 28 U.S.C. §1915A(b)(1).

I. **Motion to Proceed** *in forma pauperis*

Plaintiff filed a motion for leave to proceed in this case without prepayment of the filing fee. After a review of his submissions, the undersigned granted Plaintiff's motion, but found that Plaintiff could pre-pay at least small portion of the filing fee. Plaintiff was thus ordered to pay a partial filing fee of $18.32. He has now responded (ECF No. 14) to the Order and explains that he in fact attempted to comply, but prison officials have failed to process his requests for an inmate withdrawal.

Plaintiff should not be penalized for the failures of prison officials, and the undersigned finds that Plaintiff has shown good cause for his failure to comply. Plaintiff will thus now be **GRANTED** leave to proceed without prepayment of any portion of the filing fee. This does not mean that the filing fee is waived. Plaintiff is still obligated to pay the full $350.00 filing fee under the payment plan in § 1915(b). The Court's filing fee is not refundable, regardless of the outcome of this case. Plaintiff is responsible for paying the entire fee even if his case is dismissed prior to service.

II. **Preliminary Review of Plaintiff's Complaint**

A. **Standard of Review**

Because Plaintiff is a prisoner "seeking redress from a governmental entity or [an] officer or employee of a governmental entity," this Court is required to conduct a preliminary screening of his complaint. *See* 28 U.S.C. § 1915A(a). In so doing, the district court must accept all factual allegations in the complaint as true. *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004). *Pro se* pleadings are also "held to a less stringent standard than pleadings drafted by attorneys" and are "liberally construed" by the

2

court. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

A *pro se* pleading is, nonetheless, subject to dismissal prior to service if the court finds that the complaint, when construed liberally and viewed in the light most favorable to the plaintiff, fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1). To state a claim, a complaint must include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The plaintiff must also allege sufficient facts to "raise the right to relief above the speculative level" and create "a reasonable expectation" that discovery will reveal evidence to prove a claim. *Id*. "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "[A] complaint must contain either direct or inferential allegations" from which the court can identify the "material elements necessary to sustain a recovery under some viable legal theory." *Green v. Sec'y, Fla. Dep't of Corr.*, 618 F. App'x 655, 656 (11th Cir. 2015) (quoting *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006). *See Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 684 (11th Cir. 2001).

### B. Plaintiff's Claims

The present action arises out of Plaintiff's confinement at both Telfair State Prison and the Georgia Diagnostics and Classification Prison. The Amended Complaint alleges that Plaintiff was viciously attacked by multiple "Muslim inmates" at Telfair State Prison on July 15, 2013. He further alleges that a number of TSP corrections officers responded but did not intervene to stop the attack and that the medical staff thereafter failed to provide

adequate treatment for his physical injuries – which included a broken clavicle, a back injury, and many cuts and bruises. Plaintiff spoke with "Inmate Affairs" investigators about the incident on August 4, 2013, and was warned by Warden Danforth to "watch" what he said – or that Danforth would "transfer [Plaintiff] somewhere worser than here."

Five days later, Plaintiff was in fact transferred to the GDCP's Special Management Unit ("SMU") on August 9, 2013. Shortly after his arrival at GDCP, Plaintiff informed prison officials about his need for medical care. He was then examined by Dr. Edward Burnside on August 20 and 22, 2013, and x-rays were taken. Plaintiff, however, was unsatisfied with the medical treatment he received, and he "submitted notarized complaints" to the Medical Service Director, Dr. Sharon Lewis. Plaintiff was later re-examined by Dr. Burnside on October 23, 2013, who then found that Plaintiff was "missing" two inches of bone in his shoulder. Burnside wrote Plaintiff a prescription for Ibuprofen and advised him to "layup and heal." Burnside did not schedule Plaintiff for surgery or physical therapy at that time, and Plaintiff has still yet to undergo the surgery *he* believes is necessary to prevent further muscle and nerve damage to his shoulder.

Plaintiff also complains that, when transferred to GDCP, he was assigned to Tier II segregated confinement. Plaintiff's classification and placement hearings were conducted by Rufus Logan and James McMillian, and these officials apparently considered "false evidence" when making their decision. Plaintiff additionally contends that Defendants Chatman, Bishop, and McCloud have since decided to keep Plaintiff in Tier II through "arbitrary" procedures *and* that the review process is in-and-of-itself "perfunctory and meaningless," and provides no guarantee or requirement of eventual release for inmates.

Plaintiff had spent approximately 770 days in Tier II segregation at the time the Amended Complaint was filed. This consists of 24-hour-a-day confinement in an 8'x10' sparsely furnished, poorly ventilated cell with the exception of two short periods of restrained recreation (in a fenced cage). Plaintiff also contends that the SMU is loud, chaotic, and unhealthy because of mildew, mold and inmates who throw urine and feces. Because he is housed in SMU, Plaintiff is denied the right to attend Islamic Worship Services and denied access to legal aid materials available to other inmates.

Plaintiff has thus filed the present civil rights action (1) against TSP defendants for failure to protect, retaliation, and denial of medical care and (2) against GDCP defendants based on his allegations of a denial of medical care, deprivation of due process, the conditions of his confinement, his lack of access to legal materials, and his inability to attend group worship services.

1. Claims for Failure to Protect

Plaintiff's Amended Complaint first attempts to state claims for failure to protect against TSP officials arising out of the July 2013 attack. Plaintiff's allegations, when accepted as true and read in his favor, are sufficient to allow Plaintiff to go forward with his Eighth Amendment claims against the TSP officers who failed to intervene - Wilcox, Jordan, Taylor, Bell, and John Doe.[1]

---

1 A claim against an unnamed defendant ("Officer Doe") may proceed when the plaintiff's description of the defendant is so specific that the party may be identified for service even though his actual name is unknown. *See Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992). In such cases, the allegations in the complaint make it clear that the plaintiff can uncover the defendant's name through discovery. *See id; Bowens v. Superintendent of Miami South Beach Police Dept*, 557 Fed. App'x. 857, 862 (11th Cir. Feb. 19, 2014). Plaintiff's allegation that Officer Doe was on the

5

Plaintiff, however, has not stated a viable Eighth Amendment claim against Warden Danforth. Plaintiff's Amended Complaint does not allege that Warden Danforth was personally involved or that he otherwise caused the events of July 12, 2013. It is also well settled, that a warden cannot be held liable, under § 1983, for the unconstitutional conduct by his officers, absent evidence that the he personally participated in the constitutional violation or that a causal connection exists between some act by warden and the officers' conduct. Again, Plaintiff has not made any allegations of such participation or causal link. It is not enough for Plaintiff to merely assert that Danforth is legally responsible for the safety of inmates: That is not a factual allegation but legal conclusion, which will not preclude dismissal. *See Averhart v. Warden*, 590 F. App'x 873, 874 (11th Cir. 2014)

It is accordingly **RECOMMENDED** that the Eighth Amendment claims against Warden Danforth be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

2. Claims for Denial of Medical Care

Plaintiff's claims for denial of medical care include events and treatment at both TSP and GDCP. Plaintiff claims that, shortly after the attack at TSP, he spoke with Deputy Warden Zanders and requested medical treatment, but Zanders ignored him. Ten days later, Plaintiff was seen by Nurse Jane Doe[2] for a "medical call-out," but she refused to examine his "broken clavicle" or dress his lacerations. Plaintiff was then partially

---

CERT Team and held a video camera during the incident in question is sufficient for the Court to expect that discovery is likely to reveal the name of this party.

2 As stated above, n.2 *supra*, fictitious party pleading is not generally permitted in federal court unless the allegations in the complaint make it clear that the plaintiff can uncover the defendant's name through discovery. Given the specificity provided by Plaintiff in the Amended Complaint – i.e., the date he was seen by Nurse Jane Doe on a documented "medical call-out" – the Court expects that discovery is also likely to reveal the name of this party.

examined by Dr. Chaney at TSP who "observed a broken clavicle," "protruding bone," and noted that surgical evaluation was a "possibility."

After Plaintiff was transferred to GDCP on August 9, 2013, he informed Defendant Timothy Ward of his need for immediate medical treatment.  At some time within the next week, Plaintiff was examined and x-rayed by Dr. Edward Burnside.  Later, Plaintiff submitted "notarized complaints" to Dr. Sharon Lewis regarding the denial of medical treatment.  On Oct 22, 2013, Dr. Burnside re-examined Plaintiff and read the prior x-rays; he noted that Plaintiff had about "two inches of bone missing" and prescribed Ibuprofen and rest.  He did not refer Plaintiff for further treatment or consult.

Plaintiff's allegations of denied medical care at TSP and GDCP, when viewed in Plaintiff's favor, are sufficient to allow him to go forward with Eighth Amendment claims against Nurse Jane Doe, Dr. Chaney, and Dr. Burnside.

Plaintiff, however, does not provide sufficient allegations to state a claim against the other defendants mentioned – Tom Ward, Deputy Warden Zanders, or Dr. Sharon Lewis. As such, the Complaint does not contain facts showing that these four defendants acted with deliberate indifference to his serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  Even if the Court were to assume that Plaintiff's injuries were sufficiently serious to invoke Eighth Amendment protections, Plaintiff's conclusory allegations - that the defendants ignored his requests for treatment - fall short of showing that Defendants were in fact subjective aware of a substantial risk of danger.  There is also nothing that shows how either Ward, Zanders, or Lewis disregarded any such risk "by conduct that is more than mere negligence." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011).

7

It is accordingly **RECOMMENDED** that Plaintiff's Eighth Amendment claims for denial of medical care against Defendants Ward, Zanders, and Lewis be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

### 3. Retaliation Claim

Plaintiff also brings a First Amendment retaliatory transfer claim against Warden Danforth. Plaintiff alleges that when he spoke with "Inmate Affairs" investigators about the July 2013 incident on August 4, 2013, and he warned by Warden Danforth to "watch" what he said – or that Danforth would "transfer [Plaintiff] somewhere worser than here." Plaintiff was then transferred to the GDCP's Special Management Unit ("SMU") five days later on August 9, 2013. These allegations, when read in Plaintiff's favor, do warrant further factual investigation. His retaliation claim against Warden Danforth is thus also allowed to go forward.

### 4. Due Process Claims

Next, Plaintiff complains of his assignment to Tier II segregation after his arrival at GDCP. Plaintiff alleges that Unit Managers Logan and McMillian held his classification and placement hearings and considered "false evidence" against him. Warden Chapman, Rodney McCloud, and June Bishop have since overseen Plaintiff's classification reviews and refuse to articulate "specific security concerns" warranting his continued detention in Tier II. Plaintiff contends that the Tier II system itself violates due process, as it allows officers "arbitrarily" to assign demerits to prisoners, that the review decisions are "arbitrary," and that the review process is "perfunctory and meaningless," and provides no maximum time guarantee or requirement of eventual release for inmates.

Plaintiff's conclusory allegations, however, are not sufficient to state a claim. The DOC's Tier classification system is not "arbitrary" simply because *Plaintiff* alleges that it is so. Again, this is not a "fact" that can be alleged by Plaintiff; it is a legal conclusion. The Court is certainly "not bound to accept as true a legal conclusion couched as a factual allegation." *See Papasan v. Allain*. 478 U.S. 265, 286 (1986). The introduction of "false evidence" in Plaintiff's classification hearing is also not alone sufficient to establish a due process violation. Prisoners do not have a constitutionally guaranteed immunity from being falsely or wrongly accused of conduct. *Freeman v. Rideout*, 808 F.2d 949, 951 (2nd Cir. 1986). The Constitution requires only that Plaintiff be afforded due process, including at a minimum an institutional hearing and an opportunity to rebut any such falsities or inaccuracies. *Id*. at 952. Thus, in this case, Plaintiff can state a due process claim only if he has alleged sufficient facts to show that the hearing itself was constitutionally deficient. He, however, has not offered any *factual* allegations to show that he was denied due process in his classification and placement.

It is therefore **RECOMMENDED** that Plaintiff's due process be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

### 5. Conditions of Confinement Claims

Plaintiff also challenges the physical conditions of his confinement in the SMU. As discussed above, Plaintiff has spent more than 770 days in Tier II segregation. This consists of 24-hour-a-day confinement in an 8'x10' sparsely furnished, poorly ventilated cell with the exception of two short periods of restrained recreation (in a fenced cage). Plaintiff also contends that the SMU is loud, chaotic, and unhealthy because of mildew,

mold, and inmates who throw urine and feces.   Because he is housed in SMU, Plaintiff is additionally denied the right to attend Islamic Worship Services and denied access to legal books and electronic materials available to other inmates.

In his Complaint, however, Plaintiff has failed to identify any one the many named defendants as being responsible for the challenged conditions.   That is alone a sufficient reason to dismiss this claim.   *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1234, at 381–85 (3d ed 2004) ("[A] complaint will be held defective ... if [it] fails to connect the defendant with the alleged wrong.").

Plaintiff's vague allegations, even when construed liberally and read in the light most favorable to Plaintiff, also do not describe the sort of "extreme" deprivation that an Eighth Amendment claim demands.   *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).   To prevail on a conditions of confinement claim, a prisoner must prove that his conditions are objectively and sufficiently "serious," or "extreme," so as to constitute a denial of the "minimal civilized measure of life's necessities." *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010).   This standard is only met when the challenged conditions pose "an unreasonable risk of serious damage to [the prisoner's] future health or safety," *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004), or if society otherwise "considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 37 (1993).   Thus, isolated or "limited periods of incarceration in unsanitary conditions are generally insufficient to evidence an Eighth Amendment violation." *Mckissick v. Owens*, No. CV 312–065, 2013 WL 1213087, at *2 (S.D. Ga. Feb. 21, 2013).

Likewise here, for limited periods, none of the conditions described in Plaintiff's Complaint pose an unreasonable risk of serious damage to his health nor offend the contemporary standards of decency. *See id.* *See e.g., Alfred v. Bryant*, 378 F. App'x 977, 980 (11th Cir. 2010) (living with a toilet that occasionally overflows "is unpleasant but not necessarily unconstitutional"); *Sterling v. Smith*, No. CV606-103, 2007 WL 781274, at *4 (S.D. Ga. Mar. 8, 2007) (allegation that inmates sometimes throw feces and other bodily fluids from their cells was not sufficient to state a claim). In his Amended Complaint, Plaintiff does not specify the length of time or how often he has been exposed to urine, feces, or mold. He does not claim that feces or urine is thrown into *his* cell, and he does not allege that staff failed to clean (or give Plaintiff supplies to clean) for an unreasonable length of time after this occurred. While the conditions described by Plaintiff certainly do not sound comfortable or pleasant, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) ("the Constitution does not mandate comfortable prisons").

It is therefore **RECOMMENDED** that Plaintiff's Eighth Amendment conditions of confinement claims also be **DISMISSED WITHOUT PREJUDICE**.

### 6. Free Exercise Claim

Plaintiff further complains that the restrictions on his attending or viewing group worship services via closed circuit television or video violates his First Amendment rights – and presumably also § 3(a) of Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), § 2 et seq., 42 U.S.C.A. § 2000cc et seq. The First Amendment of the United States Constitution prohibits prison officials from imposing a substantial burden on

11

the free exercise of an inmate's "sincerely held" religious belief unless their actions or restrictions are "reasonably related to legitimate penological interests.'" *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348–53 (1987). RLUIPA likewise "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). "More expansive than prisoners' rights under the First Amendment, RLUIPA 'affords to prison inmates a heightened protection from government-imposed burdens, by requiring that the government demonstrate that the substantial burden on the prisoner's religious exercise is justified by a compelling, rather than merely a legitimate, governmental interest.'" *Gardner v. Riska*, 444 F. App'x 353, 354 (11th Cir. 2011) (per curiam) (not selected for publication in the Federal Reporter) (quoting *Smith v. Allen*, 502 F.3d 1255, 1266 (11th Cir. 2007)).

Thus, to state a claim under either provision, a prisoner must demonstrate that Defendants are imposing a substantial burden on the free exercise his religious beliefs such that "under the restrictions imposed" he is essentially "deprived of all means "of practicing his "religion." *See McCorkle v. Johnson*, 881 F.2d 993, 996 (11th Cir. 1989). *See also Asad v. Bush*, 170 F. App'x 668, 672 (11th Cir. 2006) (because "the guards did not prohibit the inmates from exercising their religion in an alternative location, [plaintiff] has not stated a claim under RLUIPA"). Plaintiff does not allege this type of deprivation. Although Plaintiff alleges that he is denied participation in group worship, there is simply nothing in the Complaint to suggest that Plaintiff has no alternative means of exercising his right to worship while in Tier II segregation. Furthermore, even if he had sufficiently shown a

substantial burden on the exercise of his religious beliefs, Plaintiff has again failed to specifically link the constitutional violation to the conduct of any named defendant. This also renders this claim fatally deficient.

It is accordingly **RECOMMENDED** that Plaintiff's free expression and RILUPA claims be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

### 7. Access to the Courts Claim

Finally, Plaintiff alleges that he has unconstitutionally been denied access to the courts because SMU inmates are not allowed to go to the law library or access library books. Prisoners, however, have no "abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). To state a First Amendment claim, a prisoner alleging a lack of access to a law library must show that he has suffered an "actual injury." *Id*. In other words, a prisoner would have to demonstrate that the lack of access to the law library *actually hindered* his efforts to pursue a specific legal claim that challenged either his conviction or conditions of confinement. *Id*. at 354-55.

Though, in this case, Plaintiff asserts that he has both a civil rights action and petition for habeas corpus pending in this Court, he has not alleged any actual injury in his Complaint. And, even if Plaintiff could show an actual injury, his Complaint again does not link the conduct or policy of any named defendant with the denial of access to legal materials. It is accordingly **RECOMMENDED** that Plaintiff's First Amendment claims also be **DISMISSED WITHOUT PREJUDICE**.

### III. Right to File Objections

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to any recommendation with the United States District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Order and Recommendation. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

### IV. Order for Service

For those reasons discussed above, it is hereby **ORDERED** that service be made on Defendants Danforth, Wilcox, Jordan, Taylor, Bell, Cert. Officer Doe, Nurse Jane Doe, Dr. Chaney, and Dr. Burnside and that they file an Answer, or other response as appropriate under the Federal Rules, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are also reminded of the duty to avoid unnecessary service expenses, and the possible imposition of expenses for failure to waive service.

### DUTY TO ADVISE OF ADDRESS CHANGE

During this action, all parties shall at all times keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of any change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished (i.e., by U.S. Mail, by personal service, etc.).

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has

been filed on behalf of Defendants from whom discovery is sought by Plaintiff. Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.  Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.  Plaintiff's deposition may be taken at any time during the time period hereinafter set out, provided that prior arrangements are made with his custodian. Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Fed. R. Civ. P. 37 of the Federal Rules of Civil Procedure.

**IT IS HEREBY ORDERED** that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by Defendants (whichever comes first) unless an extension is otherwise granted by the Court upon a showing of good cause therefor or a protective order is sought by Defendants and granted by the Court.   This 90-day period shall run separately as to each Defendant beginning on the date of filing of each Defendant's answer or dispositive motion (whichever comes first).  The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall <u>not</u> be filed with the Clerk of Court.  No party shall be required to respond to any discovery not directed to him or served upon him by the opposing counsel/party.  The undersigned incorporates herein those parts of the Local Rules imposing the following limitations on discovery: except with written permission of the Court first obtained, INTERROGATORIES may not exceed TWENTY-FIVE (25) to

each party, REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and REQUESTS FOR ADMISSIONS under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.  No party is required to respond to any request which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

Dismissal of this action or requests for judgment will not be considered by the Court in the absence of a separate motion accompanied by a brief/memorandum of law citing supporting authorities.  Dispositive motions should be filed at the earliest time possible, but no later than one hundred-twenty (120) days from when the discovery period begins.

### DIRECTIONS TO CUSTODIAN OF PLAINTIFF

Following the payment of the required initial partial filing fee or the waiving of the payment of same, the Warden of the institution wherein Plaintiff is incarcerated, or the Sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. In accordance with provisions of the Prison Litigation Reform Act, Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.  It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the

granting of judgment against him prior to the collection of the full filing fee.

## PLAINTIFF'S OBLIGATION TO PAY FILING FEE

Pursuant to provisions of the Prison Litigation Reform Act, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay any balance due on the filing fee in this proceeding until said amount has been paid in full; Plaintiff shall continue to remit monthly payments as required by the Prison Litigation Reform Act. Collection from Plaintiff of any balance due on the filing fee by any means permitted by law is hereby authorized in the event Plaintiff is released from custody and fails to remit payments.   In addition, Plaintiff's Complaint is subject to dismissal if he has the ability to make monthly payments and fails to do so.

**SO ORDERED**, this 10th day of February, 2016.

s/ Charles H. Weigle  
Charles H. Weigle  
United States Magistrate Judge